UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| WILLIAM C. HAYWOOD<br><br>     Plaintiff,<br><br>-vs-<br><br>EL PASO POLICE DEPARTMENT, CITY OF EL PASO, TEXAS, GREGORY K. ALLEN, "OFFICER OTERO", "OFFICER CERVANTEZ", and JOHN AND JANE DOE SUPERVISORS (A-Z), JOHN AND JANE DOE OFFICERS (A-Z), all individuals being sued in their individual and official capacity,<br><br>     Defendants. | CASE NO.: 3:20-CV-114 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

BRANDON J. GRABLE
**GRABLE GRIMSHAW MORA PLLC**
Texas State Bar No. 24086983
brandon@ggm.law
1603 Babcock Road, Suite 280
San Antonio, Texas  78229
Telephone: (210) 963-5297
Facsimile: (210) 963-5291
*Attorney for Plaintiff*

ROOK ELIZABETH RINGER, ESQ.
[*Pro Hac Vice* to be Applied For]
**LENTO LAW GROUP, P.C**
2000 E. 12th Ave., #76151
Tampa, FL 33605-3955
904.602.9400 x 467 (Office)
904.299.5400 (Fax)
reringer@lentolawgroup.com
*Attorney for Plaintiff*

**COMES NOW** the Plaintiff, WILLIAM C. HAYWOOD (hereinafter, the "Plaintiff"), by and through his undersigned attorneys, complaining of Defendants, and respectfully alleges as follows:

## JURISDICTION AND VENUE

1.      This is a civil rights action in which the Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments.

2.      Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

3.      This Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

4.      The events that gave rise to this lawsuit took place in El Paso, Texas.

5.      Venue is appropriate in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) since the individual Defendants are employees of the El Paso Police Department and City of El Paso and the acts providing the legal basis for this Complaint occurred in El Paso, Texas.

## PARTIES

6.      Plaintiff, William C. Haywood, is a citizen of El Paso, Texas.

7.      Defendants are all, upon information and belief, Texas municipal entities and/or individual members of law enforcement agencies, in an appointed or elected capacity.

8.      Defendant City of El Paso operates the El Paso Police Department, a law enforcement agency, and is a municipality capable of being sued under Texas law. The City of El Paso is the legal entity responsible for the El Paso Police Department. The Plaintiff bases all applicable and appropriate claims as to the Defendants City of El Paso and El Paso Police Department on the doctrines of respondeat superior or vicarious liability, and municipal liability pursuant to Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658 (1978).

9.     Defendant Gregory K. Allen (hereinafter, "Allen"), was at all times relevant, the Chief of Police of the El Paso Police Department. He is sued in his personal, official, and individual capacities pursuant to applicable law.

10.    Defendant, "Officer Otero"[1] (hereinafter, "Otero") is employed by the El Paso Police Department as a law enforcement officer in the City of El Paso and was acting under the color of state law. He is sued in his personal, official, and individual capacities pursuant to applicable law.

11.    Defendant, "Officer Cervantez" [1] (hereinafter, "Cervantez") is employed by the El Paso Police Department as a law enforcement officer in the City of El Paso and was acting under the color of state law. He is sued in his personal, official, and individual capacities pursuant to applicable law.

12.    Defendants John and Jane Doe Supervisors A-Z[1] (hereinafter, the "John Doe Supervisors") are law enforcement supervisors employed by the El Paso Police Department in the City of El Paso and were acting under the color of state law. They are sued in their personal, official, and individual capacities pursuant to applicable law.

13.    Defendants John and Jane Doe Officers A-Z[1] (hereinafter, the "John Doe Officers") are law enforcement officers employed by the El Paso Police Department in the City of El Paso and were acting under the color of state law. They are sued in their personal, official, and individual capacities pursuant to applicable law.

14.    Collectively, the Defendants Otero, Cervantez, John Doe Supervisors, and John Doe Officers will be referred to as, the "Officers".

---

[1] Due to the nature of the injuries suffered by the Plaintiff as detailed within, the Plaintiff was only able to determine the names of the principal officers involved, Otero and Ramirez, but their complete identities will undoubtedly be easily determined during the discovery process.

## FACTUAL BACKGROUND

### The April 27, 2018 Arrest

15.     On the night of April 27, 2018, the Plaintiff was driving his vehicle when law enforcement officers Otero and Cervantez attempted to stop him for what turned out to be expired paper tags.

16.     At that time, and due to the fact that he had been drinking alcohol prior to the stop, the Plaintiff panicked and sped away from the officers.

17.     However, the Plaintiff accidentally crashed into either a stop sign or a pole approximately four blocks away.

18.     Pursuant to the commands of Otero or Cervantez, the Plaintiff then got out of the vehicle and put his hands up.

19.     Next, pursuant to further commands of the officers, the Plaintiff turned around and placed his hands behind his head.

20.     At this point, Otero or Cervantez came up behind him and wrapped an arm around the Plaintiff's neck, choking him and making him unable to breathe.

21.     Next, Otero or Cervantez kicked the Plaintiff's legs out from under him in order to effectuate some kind of "take-down".

22.     Due to Otero or Cervantez's "take-down", the Plaintiff was forced face-first into the sidewalk and street pavement, with the full weight of the officer bearing down upon him.

23.     The Plaintiff could head multiple other officers approaching and shouting.

24.     Although the Plaintiff was securely incapacitated and face first on the ground, the John Doe Officers approached and started also kicking and punching him (with closed fists) in the face.

25.     One of the Officers handcuffed the Plaintiff, at which time another Officer then kicked him hard in the right side of his ribs.

26.     At this point, the Officers grabbed the Plaintiff by the head and neck and slammed his face into the sidewalk, causing some of the Plaintiff's teeth to fly out of his mouth.

27.     The Officers continued slamming the Plaintiff into the sidewalk until he passed out.

28.     When the Plaintiff awoke, he was in great pain, as his face and body had been severely beaten.

29.     The Plaintiff attempted to lift his face up, but states that, "it felt glued to the sidewalk".

30.     Eventually, the Plaintiff raised his head up and determined that his face was in a puddle of drying blood, creating the feeling of being "glued" to the sidewalk.

31.     One Officer asked the Plaintiff why he "ran".

32.     The Plaintiff truthfully responded that he did not "run" or attempt to "run", as he followed the orders of the Officers to stand and put his hands up.

33.     The Officer then stated to the Plaintiff that the Plaintiff had "run" because he had a knife on him.

34.     The Officer then threw down in front of the Plaintiff a common pocket-knife that was not owned, carried, or known by the Plaintiff.

35.     The Officer then said it was because of the knife that he ran, "or was it because [he] had a gun?"

36.     At this point, the Plaintiff stated that he did not have any knife or gun or anything else illegal.

37.     The Officer then angrily responded, "You have whatever I say you have!"

38.     At that point, the Plaintiff was then carried away by medics who placed him in an ambulance.

39.     The Plaintiff was rushed by ambulance to University Medical Center in El Paso, Texas (hereinafter, "University Medical Center").

40.     At around this point, the Plaintiff first realized that his front teeth had been knocked out by his face having been slammed into the sidewalk by the Officers.

41.     At University Medical Center's emergency room, the Plaintiff was treated for his wounds and he was subjected to magnetic resonance imaging (i.e., an "MRI") to determine if he had any broken ribs.

42.     The Plaintiff also received stitches on his lips and eyebrows, and given intravenous medications for the extreme pain that he was in.

43.     There were two police officers in the room with him, Otero and Cervantez, and the Plaintiff verbally expressed his displeasure with the excessive force that had been used upon him to this point.

44.     At that point, Cervantez approached the Plaintiff and punched him three (3) times on the left side of his face and eye.

45.     During the battery, a Nurse[2] (hereinafter, the "Nurse") walked in and immediately rushed out.

46.     The Plaintiff pleaded with the Nurse for help, as she had previously been tending to his wounds, but the Nurse left and did not return for approximately five (5) minutes.

47.     When the Nurse returned, she told the Plaintiff to "shut up or it will get worse."

48.     The Plaintiff was eventually released and placed in a police car to be taken to the

---

[2] The Plaintiff describes the Nurse as a white woman in her late 30s/early 40s, with red hair.

northeast El Paso Police Department sub-station, located at 9600 Dyer St, El Paso, TX 79924 (hereinafter, the "Sub-Station").

49.    While being placed in the police car, the Officers again choked the Plaintiff and punched him.

50.    As a result of the repeated choking attacks by the Officers, the Plaintiff was having difficulty breathing when he arrived at the Sub-Station.

51.    Due to his difficulty breathing, the Plaintiff was again removed by ambulance, this time to Las Palmas Del Sol urgent care clinic (hereinafter, the "Clinic") at 10640 Gateway Blvd. North, 79934, where he was treated for a few hours, approximately from 5:00AM to 7:00AM on April 28, 2018.

52.    After being released from the Clinic, the Plaintiff was taken to the Downtown Detention Facility, located at 601. E. Overland, El Paso, TX 79901 (hereinafter, the "Downtown Jail").

53.    Over the next five to six days, the Plaintiff was treated for his wounds, until such time that the Plaintiff was able to be bonded out on bail.

54.    The Plaintiff suffered the following injuries as a result of the 2018 Arrest:

    a.    Two black eyes;
    b.    Stitches on his eye brow and lower lip;
    c.    Three (3) missing front teeth;
    d.    Skin torn off of his right forearm by abrasion;
    e.    Bruised ribs;
    f.    Bruised left leg; and
    g.    Bruises on shoulders and back.

**After the Plaintiff's Release from the Downtown Jail**

55.    Almost immediately after being released, the Plaintiff complained to the El Paso Police Department's Internal Affairs Department (hereinafter, "Internal Affairs") and filed charges

against Otero, Cervantez, and another Officer, possibly named Washington.[3]

56.    The Plaintiff gave statements to the Internal Affairs Officer, and pictures were taken of his wounds.

57.    Due to the severity of his injuries, as well as the time spent in jail, the Plaintiff missed approximately three (3) weeks of work.

58.    He had been working prior to the arrest as an irrigation pipe layer for Bowen Ranch, located at 5101 Stan Roberts Ave., El Paso, Texas, 79934 (hereinafter, "Bowen Ranch").

59.    The Plaintiff attempted to return to work, but due to the injuries he sustained in the 2018 Arrest, he was physically unable to do his job as before, and he was laid off.

60.    On or about November of 2018, the Plaintiff was notified that the internal affairs case had been "closed" by someone from Internal Affairs.

## The April 27, 2019 Arrest

61.    On April 27, 2019, exactly one year after the first arrest, Otero again pulled over the Plaintiff, this time claiming that his vehicle's taillight was inoperable (hereinafter, the "2019 Arrest").

62.    The Plaintiff disputes that the taillight was not working, and states that it was in working order at that time.

63.    Otero then asked for the Plaintiff's driver's license and insurance, which he provided.

64.    Approximately one (1) minute later, six (6) more police vehicles arrive, at which point the Plaintiff was personally searched, and he was then thrown or pushed down by the Officers to sit on the curb.

---

[3] The Plaintiff remembers that the officer in question was African-American and possibly named "Washington".

65.     The Officers did not find any illegal substances or contraband to support their search.

66.     However, Otero and the Officers then placed the Plaintiff under arrest for not having a front license plate on his vehicle, which is normally an approximately $31.00 ticket, rather than an arrestable offense.

67.     The Officers then placed the Plaintiff in a police vehicle and booked him again at the Downtown Jail.

68.     Additionally, the Officers seized and impounded the Plaintiff's vehicle, a 2005 GMC Yukon Denali, as well as approximately $16,200.00 in cash that he had on his person at the time of the arrest.

69.     During the arrest and transport to the jail, the Plaintiff was again "pushed around" and "punched" by the Officers, but it was not at a level approaching the severity of the 2018 Arrest.

70.     At some point during the arrest, Otero stated something to the effect of, "You file charges on us, this is what happens. Don't mess with the Northeast Gang Unit!"

71.     The Plaintiff suffered the following injuries as a result of the 2018 Arrest:

    a.     Bruised wrist;
    b.     Fractured right pinky finger; and
    c.     Bruises on neck and arm.

## COUNT I
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (Fourth Amendment – Excessive Force)
## (Against All Defendants)

72.     Plaintiff incorporates by reference all prior paragraphs describing the parties and factual allegations, because all such paragraphs are pertinent to this claim.

73.     The Fourth Amendment prohibits law enforcement from using excessive force when effectuating an arrest.

74.     The Plaintiff did not pose any threat to the safety of any of the Officers or to the safety of any other civilians in either the 2018 Arrest or the 2019 Arrest.

75.     At all times relevant, Plaintiff had a clearly established right to liberty, including his right to personal safety and bodily integrity, as well as protection from unlawful seizure, unnecessary force, unreasonable force, and excessive force pursuant to the Fourth Amendment to the United States Constitution.

76.     The use of force against Plaintiff described herein was excessive, without legal justification, and not justified by the totality of the circumstances.

77.     At all times relevant as law enforcement officers acting under color of law, Defendant Officers were required to obey the laws of the United States.

78.     Defendants intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently injured, through the use of excessive force, the Plaintiff without any lawful basis.

79.     Defendants' actions constituted excessive force.

80.     The aforementioned acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States, and in violation of 42 U.S.C. § 1983.

81.     As a proximate result of the illegal and unconstitutional acts of the Defendants, the Plaintiff was harmed and suffered damages for his physical injuries and their long-lasting after-effects, mental pain, emotional injury and pain, mental anguish, his unlawfully-seized vehicle, his unlawfully-seized money, loss of work, humiliation, and embarrassment, and has suffered damages in an amount in excess of $100,000.00.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourth Amendment – Unlawful Detainment & Arrest)**
**(Against All Defendants)**

82.     The Plaintiff incorporates by reference all prior paragraphs describing the parties

and factual allegations, because all such paragraphs are pertinent to this claim.

83. The Fourth Amendment requires police officers to have articulable reasonable suspicion before detaining a criminal suspect.

84. The Fourth Amendment requires police officers to have probable cause before placing a criminal suspect under arrest.

85. At all times relevant, the Plaintiff had a clearly established right to liberty, including his right to personal safety and bodily integrity, as well as protection from unlawful seizure, unnecessary force, and unreasonable force pursuant to the Fourth Amendment to the United States Constitution.

86. At all times relevant, as police officers acting under color of law, the Officers were required to obey the laws of the United States.

87. The Defendant Officers intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently detained, handcuffed and/or arrested the Plaintiff without a warrant or any lawful basis with respect to the 2019 Arrest.

88. The Defendant Officers effectuated the traffic stop without having any knowledge of any fact or circumstance which would lead a reasonable person to believe that Plaintiff had committed any offense, whatsoever.

89. The Defendant Officers intentionally detained and arrested the Plaintiff without a legally valid reason.

90. The Defendant Officers intentionally impounded the Plaintiff's vehicle, a 2005 GMC Yukon Denali, as well as approximately $16,200.00 in cash that he had on his person at the time of the 2019 Arrest.

91. The Defendant Officers' actions constituted an unlawful arrest of the Plaintiff.

92.     The aforementioned acts deprived the Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States, and in violation of 42 U.S.C. § 1983.

93.     As a proximate result of the illegal and unconstitutional acts of the Defendants, the Plaintiff was harmed and suffered damages for his physical injuries and their long-lasting after-effects, mental pain, emotional injury and pain, mental anguish, his unlawfully-seized vehicle, his unlawfully-seized money, loss of work, humiliation, and embarrassment, and has suffered damages in an amount in excess of $100,000.00.

**COUNT III**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourth Amendment – Unlawful Search and Seizure)**
**(Against All Defendants)**

94.     The Plaintiff incorporates by reference all prior paragraphs describing the parties and factual allegations, because all such paragraphs are pertinent to this claim.

95.     The Fourth Amendment requires police officers to possess sufficient probable cause or reasonable suspicion to search a criminal suspect or seize their personal property.

96.     The Defendant Officers intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently searched the Plaintiff's person and seized his personal property without his consent, a warrant, or any lawful basis.

97.     The Defendant Officers searched the Plaintiff's person and seized his personal property in violation of the Plaintiff's Fourth Amendment rights.

98.     At all times relevant, the Plaintiff had a clearly established right to liberty, including his right to protection from unlawful seizure pursuant to the Fourth Amendment to the United States Constitution.

99.     At all times relevant, as police officers acting under color of law, the Officers were

required to obey the laws of the United States.

100.     In violation of the Plaintiff's clearly established constitutionally-protected right to be free of unreasonable search and seizure without due process of law under the Fourth Amendment to the United States Constitution, the Defendant Officers unlawfully searched the Plaintiff's person and seized his personal property.

101.     As a proximate result of the illegal and unconstitutional acts of the Defendants, the Plaintiff was harmed and suffered damages for his mental pain, emotional injury and pain, mental anguish, his unlawfully-seized vehicle, his unlawfully-seized money, loss of work, humiliation, and embarrassment, and has suffered damages in an amount in excess of $100,000.00.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourth Amendment – Malicious Prosecution)**
**(Against All Defendants)**

102.     The Plaintiff incorporates by reference all prior paragraphs describing the parties and factual allegations, because all such paragraphs are pertinent to this claim.

103.     The Fourth Amendment requires police officers to possess sufficient probable cause before charging a criminal suspect with a crime.

104.     The Defendant Officers intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently arrested the Plaintiff and initiated criminal proceedings against him in connection with the 2019 Arrest, when they took him to jail and charged him as retaliation for the Plaintiff's Internal Affairs Complaint.

105.     The Defendant Officers' initiation of this criminal charge against the Plaintiff was done with malice and bad faith where Defendant Officers had no knowledge of any fact or circumstance which would lead a reasonable person to believe that the Plaintiff had committed any criminal offense, whatsoever.

106.    The Defendant Officers searched the Plaintiff's person and seized his personal property in violation of the Plaintiff's Fourth Amendment rights.

107.    At all times relevant, the Plaintiff had a clearly established right to liberty, including his right to protection from unlawful and malicious prosecution pursuant to the Fourth Amendment to the United States Constitution.

108.    At all times relevant, as police officers acting under color of law, the Officers were required to obey the laws of the United States.

109.    In violation of the Plaintiff's clearly established constitutionally protected right to be free of unlawful and malicious prosecution under the Fourth Amendment to the United States Constitution, the Defendant Officers unlawfully arrested and charged the Plaintiff.

110.    As a proximate result of the illegal and unconstitutional acts of the Defendants, the Plaintiff was harmed and suffered damages for his mental pain, emotional injury and pain, mental anguish, his unlawfully-seized vehicle, his unlawfully-seized money, loss of work, humiliation, and embarrassment, and has suffered damages in an amount in excess of $100,000.00.

**COUNT V**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourth Amendment – Retaliation for Protected Conduct)**
**(Against All Defendants)**

111.    The Plaintiff incorporates by reference all prior paragraphs describing the parties and factual allegations, because all such paragraphs are pertinent to this claim.

112.    The Plaintiff engaged in constitutionally protected conduct when he asserted his right to formally press charges against Otero, Cervantez, and other Officers via the Internal Affairs Complaint.

113.    The Defendant Officers stopped, detained, searched, arrested, and charged the Plaintiff for engaging in the constitutionally protected conduct of filing the Internal Affairs

Complaint against them.

114.    In retaliation for this protected conduct, the Defendant Officers intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently arrested the Plaintiff and initiated criminal proceedings against him in connection with the 2019 Arrest, when they took him to jail and charged him as retaliation for the Plaintiff's Internal Affairs Complaint, and without any lawful basis.

115.    In retaliation for this protected conduct, the Defendant Officers intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently initiated excessive force against the Plaintiff in connection with the 2019 Arrest, and without any lawful basis.

116.    The Defendant Officers' arrest and charging of the Plaintiff was done with malice and bad faith where Defendant Officers had no knowledge of any fact or circumstance which would lead a reasonable person to believe that the Plaintiff had committed any criminal offense, whatsoever.

117.    The Plaintiff's retaliatory arrest was based on the Defendant Officers' knowing, deliberate, and reckless disregard for the truth, where Defendant Officers had no knowledge of any fact or circumstance which would lead a reasonable person to believe that the Plaintiff had committed any criminal offense, whatsoever.

118.    Such deterrent was intended to serve, and would serve, as a deterrent to any person of ordinary firmness from engaging in such protected conduct.

119.    The retaliation was motivated at least in part by the protected conduct.

120.    There was a causal connection between the Plaintiff's constitutionally protected conduct and the adverse retaliatory actions taken by the Defendant Officers against the Plaintiff.

121.    The Defendant Officers intentionally arrested the Plaintiff with the intention of

confining him to the Defendants' custody, and with the intent of unlawfully imprisoning him in the Jail. The Defendant Officers' arrest and initiation of these criminal charges against the Plaintiff were done without consent, probable cause, legal justification, just cause, or any other legally valid reason.

122.    At all times relevant, the Plaintiff had a clearly established right to liberty, including his right to protection from unlawful and malicious retaliation pursuant to the Fourth Amendment to the United States Constitution.

123.    At all times relevant, as police officers acting under color of law, the Officers were required to obey the laws of the United States.

124.    As a proximate result of the illegal and unconstitutional acts of the Defendants, the Plaintiff was harmed and suffered damages for his mental pain, emotional injury and pain, mental anguish, his unlawfully-seized vehicle, his unlawfully-seized money, loss of work, humiliation, and embarrassment.

**COUNT VI**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Monell)**
**(Against Defendants City of El Paso, El Paso Police Department, John Doe Supervisors, and Allen)**

125.    The Plaintiff incorporates by reference all prior paragraphs describing the parties and factual allegations, because all such paragraphs are pertinent to this claim.

126.    Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected under the Constitution, pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).

127.    Such municipal liability exists where a city fails to properly train, supervise, and discipline its employees amounting in a deliberate indifference to one's constitutional rights.

128.     At all times relevant, Defendants City of El Paso, the El Paso Police Department, John Doe Supervisors, and Allen had a duty to properly train, supervise, and discipline their employees and agents.

129.     The Defendants City of El Paso, the El Paso Police Department, John Doe Supervisors, and Allen breached that duty, in part, by:

     a.   Improperly training, authorizing, encouraging or directing officers on proper use of force;

     b.   Failing to investigate allegations of excessive force;

     c.   Failing to discipline officers for violations of policy related to excessive force.

130.     The policy, pattern of practice, or custom of condoned misconduct is tacitly or overtly sanctioned, as evidenced by the conduct of Defendants Officers and the Defendants City of El Paso, the El Paso Police Department, John Doe Supervisors, and Allen's failure to train, supervise, investigate, and discipline any of the officers involved in this incident amounting in a deliberate indifference to the Plaintiff's constitutional rights

131.     This unconstitutional behavior of officers is carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates the constitutional rights of persons situated such as the Plaintiff

132.     Defendants City of El Paso, the El Paso Police Department, John Doe Supervisors, and Allen failed to take sufficient remedial actions to end this policy, pattern of practice, or custom within the El Paso Police Department.

133.     The condoning of misconduct, and the failure to end this policy, pattern of practice, or custom was a proximate cause to the injuries suffered by the Plaintiff.

134.     Wherefore, as a direct and proximate cause of the actions of the Defendants City of

El Paso, the El Paso Police Department, John Doe Supervisors, and Allen, the Plaintiff has suffered damages for his physical injuries and their long-lasting after-effects, mental pain, emotional injury and pain, mental anguish, his unlawfully-seized vehicle, his unlawfully-seized money, loss of work, humiliation, and embarrassment, and has suffered damages in an amount in excess of $100,000.00.

### COUNT VII
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment – Duty to Intervene)
### (Against Defendants John Doe Officers & John Doe Supervisors)

135.    The Plaintiff incorporates by reference all prior paragraphs describing the parties and factual allegations, because all such paragraphs are pertinent to this claim.

136.    Plaintiff brings this claim under 42 USC § 1983 for violation of the Fourth Amendment of the U.S. Constitution.

137.    The use of force against Plaintiff by Officer Otero, Officer Cervantez, and John Doe Officers was excessive.

138.     Defendants John Doe Officers and John Doe Supervisors had a duty to intervene and protect the Plaintiff but failed to do so.

139.    Wherefore, as a direct and proximate result of Defendants John Doe Officers and John Doe Supervisors' actions, the Plaintiff has suffered damages for his physical injuries and their long-lasting after-effects, mental pain, emotional injury and pain, mental anguish, his unlawfully-seized vehicle, his unlawfully-seized money, loss of work, humiliation, and embarrassment, and has suffered damages in an amount in excess of $100,000.00..

### COUNT VIII
### Intentional Torts: Assault, Battery, False Arrest, False Imprisonment, Intentional Infliction of Emotional Distress
### (Against All Defendants)

140.    The Plaintiff incorporates by reference all prior paragraphs describing the parties and factual allegations, because all such paragraphs are pertinent to this claim.

141.    All of the individual Defendants named in this Complaint are employees, deputies and/or agents of municipalities.

142.    All acts of the individual Defendants alleged above were conducted within the scope of the Defendants' employment or duties.

143.    The actions of the individual Defendants were willful, malicious and in violation of the known rights of the Plaintiff.

144.    On April 27-28, 2018, Defendants Otero, Cervantez, and John Doe Officers committed assault and battery upon the Plaintiff when they intentionally inflicted bodily harm by kicking, punching, and slamming the Plaintiff's face into the sidewalk several times.

145.    On April 27, 2019, Defendants Otero, Cervantez, and John Doe Officers committed assault and battery upon Plaintiff by intentionally inflicting or attempting to inflict bodily harm by punching and pushing around the Plaintiff.

146.    Defendants Otero, Cervantez, and John Doe Officers, without probable cause or articulated suspicion, handcuffed the Plaintiff and placed him in their police vehicle.

147.    Defendants Otero, Cervantez, and John Doe Officers falsely imprisoned the Plaintiff in their police vehicle.

148.    The Plaintiff's false imprisonment continued as Defendants Otero, Cervantz, and John Doe Officers transported the Plaintiff to the Downtown Jail.

149.    At all times, the Plaintiff knew he was imprisoned by Defendants Otero, Cervantez, and John Doe Officers.

150.    The Defendant Officers' conduct was intentional and done through the assertion of

legal authority over the Plaintiff.

151.    The Defendant Officers' extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Plaintiff.

152.    Wherefore, as a direct and proximate cause of the actions of Otero and Cervantez, the Plaintiff has suffered damages for his physical injuries and their long-lasting after-effects, mental pain, emotional injury and pain, mental anguish, his unlawfully-seized vehicle, his unlawfully-seized money, loss of work, humiliation, and embarrassment, and has suffered damages in an amount in excess of $100,000.00.

**COUNT IX**
**NEGLIGENCE: Negligent Hiring, Negligent Retention,**
**Negligent Supervision, Negligent Infliction of Emotional Distress**
**(Against Defendants City of El Paso, El Paso Police Department, John Doe Supervisors, &**
**Allen)**

153.    The Plaintiff incorporates by reference all prior paragraphs describing the parties and factual allegations, because all such paragraphs are pertinent to this claim.

154.    All of the individual Defendants named in this Complaint are employees, deputies and/or agents of municipalities.

155.    All acts of the individual Defendants alleged above were conducted within the scope of the Defendants' employment or duties.

156.    Defendants City of El Paso, El Paso Police Department, John Doe Supervisors, and Allen owed a duty of care to the Plaintiff to exercise reasonable care in hiring, retaining, and supervising its employees.

157.    Defendants City of El Paso, El Paso Police Department, John Doe Supervisors, and Allen knew or should have known of Defendants Otero, Cervantez, and John Doe Officers' dangerous character based on prior complaints of excessive force violations and/or background

checks including psychological evaluations.

158.    Defendants City of El Paso, El Paso Police Department, John Doe Supervisors, and Allen breached their duty of care to the Plaintiff by failing to properly supervise, provide training, and take remedial measures, such as discharge or reassignment, against their employees to ensure the safety of the Plaintiff.

159.    Defendants John Doe Supervisors include superior officers to Defendants Otero, Cervantez, and John Doe Officers.

160.    Each owed the Plaintiff a duty of care to properly supervise Defendants Otero and Cervantez.

161.    Defendants John Doe Supervisors breached their duty of care by not properly supervising Defendants Otero, Cervantez, and John Doe Supervisors in the April 2018 and April 2019 incidents with the Plaintiff.

162.     As a result of Defendants City of El Paso, El Paso Police Department, John Doe Supervisors, and Allen's negligent acts, the Plaintiff reasonably feared for his safety and has suffered severe emotional distress.

163.    Wherefore, as a direct and proximate cause of the actions of Defendants City of El Paso, El Paso Police Department, John Doe Supervisors, and Allen, the Plaintiff has suffered damages for his physical injuries and their long-lasting after-effects, mental pain, emotional injury and pain, mental anguish, his unlawfully-seized vehicle, his unlawfully-seized money, loss of work, humiliation, and embarrassment, and has suffered damages in an amount in excess of $100,000.00.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, WILLIAM HAYWOOD, demands judgment and prays for

the following relief, jointly and severally, against all Defendants:

    a.  Full and fair compensatory damages in an amount to be determined by a jury;

    b.  Punitive damages in an amount to be determined by a jury;

    c.  Reasonable attorney's fees and costs of this action; and

    d.  Any such other relief as appears just and proper.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury of all triable issues, per Fed. R. Civ. P. 38(b).

Respectfully submitted,


_____

BRANDON J. GRABLE
**GRABLE GRIMSHAW MORA PLLC**
Texas State Bar No. 24086983
brandon@ggm.law
1603 Babcock Road, Suite 280
San Antonio, Texas  78229
Telephone: (210) 963-5297
Facsimile: (210) 963-5291
*Attorney for Plaintiff*

_____

ROOK ELIZABETH RINGER, ESQ.
[*Pro Hac Vice* to be Applied For]
**LENTO LAW GROUP, P.C**
2000 E. 12th Ave., #76151
Tampa, FL 33605-3955
904.602.9400 x 467 (Office)
904.299.5400 (Fax)
reringer@lentolawgroup.com
*Attorney for Plaintiff*


DATED:    04/27/2020